ELIZABETH SCHEFFLING

*v.*

JOHN SCHEFFLING, JR.

1. In a suit for divorce for adultery, the time when, and the place where, and the person, if known, with whom the offence was committed, must be stated in the pleading, but in laying the time, it will be sufficient if the month and year are given, without specifying the particular day.

2. The complainant is not required to prove that the adultery was committed at the precise time alleged in the bill, but it must be proved to have been committed so near that time, that the variance between the allegation and proof shall not operate to the defendant's prejudice.

3. The evidence of the defendant and his alleged paramour, in denial of the adultery charged, while not entitled to the weight which would be given to the evidence of a fair and disinterested witness, is nevertheless competent, and in a case of doubt, will be sufficient to defeat the complainant's claim to a divorce.

4. The evidence of a single witness, uncorroborated and unsupported, and improbable in its details, is not sufficient to establish a charge of adultery, against the evidence of the defendant and his alleged paramour, fully and explicitly denying the truth of the charge.

On final hearing on bill and answer and proofs taken in open court.

*Mr. M. T. Newbold,* for complainant.

*Mr. Henry E. Wills* and *Mr. Gilbert Collins,* for defendant.

VAN FLEET, V. C.

This is a suit by a wife against her husband for divorce, on the ground of adultery.   The defendant has been twice mar-

ried.  He was divorced from his first wife in February, 1884, and married the complainant in May, 1885.  He obtained a divorce from his first wife on a charge of adultery, and the complainant now asks to be divorced from him for the same cause.  She charges him with having committed adultery in April, May and June, 1886, with the woman from whom he had been divorced.

There is no direct proof of adultery.  The evidence on which the complainant relies, consists entirely of proof of proximate acts, but there can be no doubt, that if the acts were committed by the defendant and his alleged paramour, which the evidence of a single witness imputes to them, there is sufficient evidence of adultery to justify a decree of divorce.  The decisive question of the case is, should the evidence of this witness be accepted as true, in view of the fact that it is 'flatly contradicted by the defendant and his alleged paramour, and is uncertain in point of time and quite improbable in an important particular.

The defendant's first wife is called Mary Smith in the bill, and has been referred to by that name in the evidence.  The acts indicating adultery were committed, if they were committed at all, at the residence of Mary Smith's mother.  At the time it is alleged they were committed, Mrs. Smith's family consisted of herself, her two daughters, Mary and Charlotte, her son Edward, and Charlotte Kamp.  Charlotte Kamp is a niece of Mrs. Smith, and had lived in Mrs. Smith's family, as a servant, for five years prior to May, 1887.  She is the witness who testifies to the proximate acts.  She swears that the defendant, at one time, was in the habit of coming to Mrs. Smith's regularly twice a week, on Tuesday and Friday evenings; that he usually came about eight o'clock and remained until ten or half-past ten; she never saw him in the house, but she knew he was there, because almost every time he came, she saw him, from the basement window, ascend the steps to the front door.  Mary always let him in.  On the first floor above the basement of the house occupied by Mrs. Smith, there are three rooms and a hall.  The front room, at the time these visits are said to have been made, was used as a parlor; the next room had a bed in it, and was used

by Mary, during the day, as a working-room—she supported herself by sewing—and by her mother at night as a bedroom, and the third was Edward's bedroom. There were two entrances to the middle room, one from the parlor by sliding doors, and the other from the hall by an ordinary door. The witness says, that the defendant and Mary, on the occasion of his visits, always occupied the middle room, and that, after they entered, Mary locked the door leading from the hall. There was no lock on the sliding doors. It appears, however, that the only knowledge the witness had that any door was locked, or that Mary was the person who locked it, is, that being in the basement, she heard a noise up-stairs which she supposed was made by turning the key in the hall door lock. She never saw Mary or the defendant lock the door, nor did she ever attempt to open it, when she supposed Mary and the defendant were in the middle or rear room, and find she could not. She also says, that on each occasion when the defendant visited Mary, after he left, she went to the rear bedroom to put the bed in condition to be slept in, and that always when the defendant had been there, she found the bed in the rear bedroom " mussed," but that she never found it so when he had not been there. She described what she meant by finding the bed " mussed " by saying that the bed was open, the bed-clothes being thrown back. These are the proximate acts on which the complainant relies. If the defendant was Mary's visitor, and he and she were the persons who were locked in, and the persons who " mussed " the bed in the rear room, there can be no doubt of the defendant's guilt.

The wrongful act, on which the complainant's right to a divorce rests, is charged in her bill to have been committed in April, May and June, 1886. Her bill was filed July 22d, 1886. In such cases, the party seeking a dissolution of the marriage tie is required to state his or her case with such fullness and particularity that the defendant may know just what the charge is that he or she is called on to answer. The time when, and the place where, and the person, if known, with whom the offence was committed, must be stated; but in laying the time, it will be sufficient if the month and year are given, without specifying the

particular day. *Marsh* v. *Marsh, 1 C. E. Gr. 391; Black* v. *Black, 12 C. E. Gr. 664.* The complainant, to entitle herself to a decree in this case, was bound to prove that the defendant had committed adultery with Mary Smith, at or near the time alleged in her bill. She was not bound to prove that he had committed that offence, with the person named, at the precise time alleged, but she was bound to show that he had committed it so near the time alleged as to render it quite clear that the variance between her allegation and her proof had not misled the defendant, or prevented him from making as complete a defence as he might have done if there had been no variance. *Miller* v. *Miller, 5 C. E. Gr. 216.*

The complainant's witness, Charlotte Kamp, was examined on the 22d of March, 1888. The proofs show that she quit the service of Mrs. Smith, and left her house the last of May, 1887. On her direct examinination, she testified that the visits which the defendant made to Mary Smith, and which she described in her testimony, were made in the Spring of 1886. On her cross-examination she changed her testimony on this point, and fixed the date of these visits as the Spring of 1887, a year after the time when the adultery charged in the bill is alleged to have been committed. The following are some of the questions put to her on this subject, and the answers she made :

" *Q.* You left Mrs. Smith's in May last, am I right?

" *A.* Yes.

" *Q.* Now, then, what I want to know is, whether you saw Mr. Scheffling there, at Mrs. Smith's, twice a week, on Tuesdays and Fridays, the same Spring that you left?

" *A.* Yes.

" *Q.* It was the same Spring that you left?

" *A.* Yes.

" *Q.* And not the year before that?

" *A.* No.

" *Q.* So that it is about a year since you saw Mr. Scheffling there?

" *A.* Yes.

" *Q.* And not two years ago?

" *A.* No."

She afterwards, on her re-direct examination, changed her tes-

timony and repeated her first statement, that the visits were made in the Spring of 1886. There are other parts of her story which, if accepted as true, render it entirely certain that the statements she made on her cross-examination, respecting the date of the visits, are erroneous, and were made under a mistake. She testified that the defendant continued to visit Mary Smith after the complainant had left the defendant; that after that time the defendant visited Mary once a week, for about twenty-five times, and that these visits occurred whilst she still remained a member of Mrs. Smith's family. The proofs show that the complainant left the defendant in June, 1886. So that it would seem to be perfectly certain that, if it be true that the weekly visits were made subsequent to the Tuesday and Friday evening visits, and while the witness was still a member of Mrs. Smith's family, the visits on Tuesday and Friday evenings must have been made in the Spring of 1886, and not in the Spring of 1887.

But can anything which this witness says, respecting the defendant's visits to Mary Smith, be accepted as true? Her testimony on this point is not only unsupported and uncorroborated, but flatly contradicted. All the other persons who were members of Mrs. Smith's family, during the year 1886, swear that they never saw the defendant in Mrs. Smith's house during that year, nor heard of his being there. The defendant and Mary Smith both positively deny that any sexual intercourse has ever taken place between them since they were divorced, and also that the defendant was ever in Mrs. Smith's house during the year 1886. Their evidence, although not entitled to the weight which would be given to the evidence of a fair and disinterested witness, is nevertheless competent and entitled to consideration. In a case of doubt, it is sufficient to defeat a complainant's claim to a divorce. *Mayer* v. *Mayer, 6 C. E. Gr. 246.* The evidence given by the defendant himself in this case impressed me as being fair, frank and truthful. But it should be said in addition, that the story of Charlotte Kamp is highly improbable. According to her evidence, each time the defendant and Mary Smith had adulterous intercourse, they left the bed, on which they laid down when their intercourse took place, in such condition as to

give unmistakable evidence of their guilt. They did not leave the bed in that conditon occasionally, or a few times, but always. Parties who commit adultery do not act in that way. Adultery is a crime which is generally committed under the cover of darkness, or in secret, and the parties who commit it usually, if not invariably, try to conceal or destroy all evidence of their guilt. This case falls clearly within the rule which declares, that the evidence of a single witness, uncorroborated and unsupported, and improbable in its details, is not sufficient to establish a charge of adultery against the evidence of the defendant and his alleged paramour, fully and explicitly denying the truth of the charge. *Berckmans v. Berckmans, 1 C. E. Gr. 122; S. C. on appeal, 2 C. E. Gr. 453.*

The complainant's bill must be dismissed.